**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5463

SHERRY LUANN WATERS,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Shelby.
Lacy H. Thornburg, District Judge.
(CR-94-44)

Submitted: October 17, 1996

Decided: October 25, 1996

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Stephen P. Lindsay, LINDSAY & HENSLEY, Asheville, North Caro-
lina, for Appellant. Mark T. Calloway, United States Attorney, Robert
J. Conrad, Jr., Assistant United States Attorney, Charlotte, North Car-
olina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Sherry Luann Waters appeals her conviction and sentence for conspiracy to possess more than 500 grams of cocaine and more than 50 grams of crack cocaine with intent to distribute, 21 U.S.C.A. § 846 (West Supp. 1996). Waters contends that the district court erred in accepting her guilty plea because she received ineffective assistance of counsel in connection with her plea. She also maintains that the court erred in sentencing her by considering hearsay evidence in determining the amount of drugs attributable to her without having an adequate basis for judging its reliability. She further alleges that the court erred in enhancing her sentence for possession of a firearm, USSG § 2D1.1(b)(1),* and in finding that she had not accepted responsibility for her conduct, USSG § 3E1.1. Finding no error, we affirm the conviction and sentence.

At her guilty plea hearing, Waters deferred presentation of a factual basis for the plea until sentencing. Information in her presentence report revealed that she was involved in an extensive crack conspiracy which flourished in Henderson County and Rutherford County, North Carolina, from 1991 to March 1994. The leader of the conspiracy was Lance McGrady, Waters' boyfriend. He arranged for the transportation of cocaine from Florida through Atlanta to North Carolina, where it was cooked into crack at various locations and distributed to numerous lower-level conspirators.

In her interview with the probation officer, Waters said she suspected McGrady might be involved in drug dealing, but denied any real knowledge of it. Waters objected to the probation officer's recommendation that she was responsible for more than 1.5 kilograms

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1994).

2

of crack and several kilograms of powder cocaine, giving her a base offense level of 38.

At the sentencing hearing, the government presented evidence of Waters' involvement through the case agent, who summarized statements and trial testimony of other participants or observers. According to these statements, Waters lived in a house rented for her by McGrady. When the house was searched, a revolver was found on top of her refrigerator and a box of ammunition for the pistol was also in the house. Waters twice carried cocaine into a co-conspirator's apartment where McGrady cooked it into crack. On one occasion, out of a total of eighteen ounces of cocaine, McGrady cooked six to eight ounces into crack. On that occasion, Waters was carrying a handgun which she handed to McGrady at his request. She was also present once when McGrady fronted Chucky Mayse eighteen ounces of cocaine. On another occasion, Waters cleaned the utensils used to cook four or five ounces of crack. She participated in shredding a number of one-ounce crack cookies in her kitchen for re-cooking.

Waters also traveled to Florida with McGrady and wired money to McGrady in Florida for Chucky Mayse, a close associate of McGrady. Investigators confirmed this particular information when they recovered Western Union receipts showing that Waters transferred money to McGrady in Florida on three occasions. Co-conspirator Calvin Ferguson told investigators that he transported a kilogram of cocaine from Florida for McGrady three times; on one occasion McGrady and Waters met him in Atlanta and accompanied him to North Carolina. In March 1994, Waters was present with McGrady in one of four cars traveling together on I-85 north of Atlanta. A kilogram of cocaine was seized from one of the cars; it was wrapped in duct tape smeared with car wax. Similar tape and car wax were found in the car in which Waters was riding. Mayse was arrested later that day.

Waters presented no evidence to rebut the government's evidence of her involvement. She testified that she had no knowledge of a firearm in her house and denied handing McGrady a firearm while he was cooking crack. She argued that the drugs distributed by McGrady and others were not reasonably foreseeable to her. The district court found that the government had proved Waters' personal possession of

3

a kilogram of cocaine and eighteen ounces of cocaine (510.3 grams) at different times as well as her observation of crack production and continuous association with the masterminds of the conspiracy. The court found that at least 1.5 kilograms of crack was reasonably foreseeable to her.

Waters contends on appeal that the sentencing judge could not adequately assess the reliability of the hearsay evidence because a different judge presided at the trial of her co-conspirators, from which some of the government's evidence was drawn, and because she had no opportunity to cross-examine those witnesses. She claims that the district court abused its discretion and ultimately sentenced her on the basis of false allegations because the court declined to review transcripts of her co-defendants' trials.

However, the government may meet its burden of proving by a preponderance of the evidence the amount of drugs attributable to a defendant by presenting evidence at the sentencing hearing, including hearsay evidence if the defendant is given the opportunity to rebut or explain it. United States v. Falesbork, 5 F.3d 715, 722 (4th Cir. 1993); United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). The Confrontation Clause does not bar the sentencing court's consideration of reliable hearsay. United States v. Petty, 982 F.2d 1365, 1367-69 (9th Cir.), amended, 992 F.2d 1015 (1993), cert. denied, 510 U.S. 1040 (1994). To comply with the requirements of due process, factual evidence submitted at sentencing need only have a minimal indicia of reliability, i.e., it must be more than mere allegation. United States v. Hicks, 948 F.2d 877, 883 (4th Cir. 1991) (citations omitted). Here, all the statements summarized by the agent were consistent. Moreover, Waters had the opportunity to cross-examine the government agent at sentencing, and also testified herself, though she chose not to discuss the extent of her involvement. She did submit a statement to the court which purported to explain fully her knowledge of the conspiracy. On these facts, we find that the district court did not err in considering the government's hearsay evidence to determine the amount of drugs for which she was responsible.

Moreover, the government's evidence that Waters was present and possessed a firearm while McGrady was cooking crack and that a firearm was stored in her house, where crack was re-processed on one

4

occasion, was more than adequate to support a two-level enhancement. USSG § 2D1.1(b)(1), comment. (n.3). While Waters testified that she never possessed a firearm and was unaware of the firearm found in her house, the district court did not find her testimony credible, and thus the enhancement was not clearly erroneous.

Waters argues that she was entitled to a three-level reduction for acceptance of responsibility based on her guilty plea and the written statement she submitted to the court at sentencing. The statement is not contained in the materials presented on appeal; however, the district court found it self-serving and in conflict with other evidence which the court found true. In addition, the court found that Waters had testified untruthfully when she said she did not possess a firearm during the conspiracy. A defendant has the burden of demonstrating acceptance of responsibility by truthfully admitting the conduct comprising her offense, including all relevant conduct. USSG § 3E1.1, comment. (n.1(a)). The court's factual finding on this issue is reviewed for clear error. United States v. Curtis, 934 F.2d 553, 557 (4th Cir. 1991). The record discloses that, despite her guilty plea, Waters denied or minimized her conduct throughout the proceedings below. Therefore, the court did not clearly err in denying her the adjustment.

Finally, Waters claims that the district court erred in allowing her to plead guilty because her attorney was ineffective in failing to advise her accurately, at the time of her plea, as to the amount of crack for which she would be held responsible. A claim of ineffective assistance is not properly raised on direct appeal unless the record discloses conclusively that defense counsel was ineffective. United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992), cert. denied, 507 U.S. 942 (1993). Here, Waters' attorney asserted at sentencing that he was surprised by additional evidence of her involvement which was developed after her plea. However, Waters was advised at the Fed. R. Crim. P. 11 hearing that she could be facing a sentence of ten years to life and that she could not withdraw her plea simply because her sentence was harsher than expected. She did not ask to withdraw her plea on this ground and she was not entitled to do so. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991), cert. denied, 503 U.S. 997 (1992). Because the record does not conclusively show ineffective assistance, we do not address the issue.

5

For the reasons discussed, the conviction and sentence are affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the record and briefs, and oral argument would not aid the decisional process.

AFFIRMED

6